IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | |
|---|---|
| TAMERRA WASHINGTON, | |
| Plaintiff, | 8:15-CV-444 |
| vs. | |
| BRUMBAUGH & QUANDAHL, P.C., LLO.; KIRK E. BRUMBAUGH; and MARK QUANDAHL, | MEMORANDUM AND ORDER |
| Defendants. | |

This dispute is straightforward: the plaintiff, Tamerra Washington, was sued in state court on an unpaid debt. As part of that proceeding, Washington was served with discovery requests which, she claims, were false and misleading. She has sued Brumbaugh & Quandahl, the debt collection firm, and the firm's two founding partners—Mark Quandahl and Kirk Brumbaugh (collectively, "B&Q"). Washington's class action complaint seeks monetary and injunctive relief under the Fair Debt Collection Practices Act (FDCPA), 15 U.S.C. § 1692 *et seq.*, and the Nebraska Consumer Protection Act (NCPA), Neb. Rev. Stat. § 59-1601 *et seq. See* filing 69.

That initial semblance of clarity, however, is lost in the over 1,200 pages of highly contentious argument and evidence currently before the Court. Those filings correspond to five pending motions, which include Washington's motion for class certification, B&Q's motion to dismiss, the parties' cross-motions for summary judgment, and B&Q's motion for contempt. As discussed in more detail below, the Court will, for the most part, address those motions in order—starting with Washington's motion for class certification. Ultimately, that motion will be denied, as will B&Q's

motion to dismiss, and its motion for contempt. The parties' cross-motions for summary judgment will be granted in part, and denied in part, as set forth below.

## BACKGROUND

Tamerra Washington incurred a debt in 2011. That bill went unpaid, so the creditor retained defendant B&Q to pursue legal action against her. On September 18, 2015, B&Q filed suit against Washington in Douglas County Court. *See* filing 69 at 4. Washington, proceeding *pro se*, filed a general denial to the complaint. Filing 69 at 5; filing 69-3 at 1.

A few weeks later, B&Q served Washington with discovery requests, including interrogatories and requests for admissions. Filing 69 at 5; filing 69-1 at 1-8. Through those documents, B&Q sought general information from Washington about the existence of the debt, and Washington's prior payment history, if any. For example, in its interrogatories, B&Q asked Washington to list the date, amount, and manner of any payments that she had made towards the underlying obligation. Filing 69-1 at 7-8. Similarly, in its request for admissions, B&Q asked Washington, among other questions, to admit or deny owing the debt, which it listed at $7,570.87. Filing 69-1 at 2-3.

B&Q's discovery requests also contained limited information on where and how Washington should submit her answers. Its requests for admissions, for example, contained the following text:

> COMES NOW the Plaintiff and propounds the following Request for Admissions upon Defendant pursuant to the Nebraska Revised Statutes. *Written, sworn answers must be filed* by Defendant[s] within thirty days of the services hereof, or the facts, the truth of which is requested, shall be deemed admitted.

Filing 69-1 at 2 (emphasis added). The materials did not, however, include information regarding Washington's rights as a Nebraska litigant. In other words, B&Q did not expressly inform Washington—through its discovery or otherwise—that she had a right to object to discovery-related inquiries under Neb. Ct. R. Disc. § 6-336. It is unclear what measures, if any, B&Q took against Washington after she was served with the interrogatories and request for admissions. But, as both parties acknowledge, Washington did complete those documents, and as instructed, filed at least one of the forms directly with the Douglas County Court. Filing 101 at 8.

Soon thereafter, Washington filed this lawsuit, claiming violations of the NCPA and FDCPA. As discussed in more detail below, Washington claims that B&Q routinely engages in abusive debt collection practices by (1) incorrectly instructing *pro se* debtors that certain answers must be "filed" and "sworn"; and (2) failing to inform debtors of their right to object to discovery-related inquiries as permitted under the Nebraska Rules of Discovery. *See* filing 69. Based on those allegations, Washington moves for certification of four plaintiff classes—two under the FDCPA, and two under the NCPA. Filing 74. The Court will address Washington's motion for class certification before turning to the parties' cross motions for summary judgment.

## CLASS CERTIFICATION

As noted, Washington moves for certification of two FDCPA classes and two NCPA classes. Filing 74. The proposed FDCPA classes—Class One and Class Two—consist of *pro se* Nebraska residents who were sued by B&Q "during the one year period prior to the filing of the complaint in this matter." Filing 74 at 2. Those classes differ, according to Washington, only in the type of violation alleged. In other words, Class 1 consists of *pro se* debtors who were served by B&Q with requests for admissions "indicating that the

recipient is to swear to the answers under oath and that the recipient's responses are to be filed with the court[.]" Filing 74 at 2. Class Two, on the other hand, consists of *pro se* debtors who were served by B&Q with "any discovery which failed to inform the recipient of the right to object to any discovery requests." Filing 74 at 2. The proposed NCPA classes—Class Three and Class Four—are materially identical to those just described, but include Nebraska residents who were sued by B&Q in the past four years, as opposed to the past 12 months. Filing 74 at 1-2.

Fed. R. Civ. P. 23(a) permits class certification where: (1) the class is so numerous that joinder of all members is impracticable (numerosity), (2) there are questions of law or fact common to the class (commonality), (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class (typicality), and (4) the representative parties will fairly and adequately protect the interests of the class (adequate representation). The primary issue here is numerosity—that is, whether Washington has shown that each proposed class is sufficiently large so as to render joinder of all its members impracticable in light of the particular circumstances of the case. *See Arkansas Educ. Ass'n v. Board of Educ. of Portland, Arkansas School Dist.*, 446 F.2d 763, 765 (8th Cir. 1971).

Washington attempts to establish numerosity with broad references to the volume of litigation B&Q files each year. Filing 75 at 20-21. She has also attached a document which purports to reflect a "random sampling" of approximately 600 cases filed by B&Q over a 4 year period. Filing 75 at 20; filing 76-7. And of those 600 cases, she has identified 45 potential class members—all of whom, Washington claims, fall into one of the four proposed classes. *See* filing 75 at 20. But as B&Q points out, Washington has provided no evidence that the 45 potential class members received the allegedly false

and deceptive discovery underlying her claims. *See* filing 91 at 30-31. In fact, the evidence suggests that many did not. *See* filing 97 at 33-34; filing 92-11; filing 92-12; filing 92-14; filing 92-13; filing 92-15.

An extensive review of the record shows that, at most, 14 other unrepresented debtors in a 12-month span *potentially* received the discovery requests at the center of the parties' dispute. *See* filing 76-4 at 15. And while Washington may disagree with that number, she has presented no evidence to suggest otherwise. Rather, as described above, her evidence consists of 45 individuals who may, or may not, have been represented at the time they received such documents, and who may, or may not, have been served with the allegedly unlawful discovery requests. The Court finds that Washington has failed to satisfy her burden as to Rule 23's numerosity requirement.

Even if numerosity was satisfied, however, Washington's motion would still fail on Rule 23(a)'s second requirement, commonality, which requires her to show that class members "have suffered the same injury." *Powers v. Credit Management Servs., Inc.*, 776 F.3d 567, 570 (8th Cir. 2015)(quoting *Gen. Tel. Co. v. Falcon,* 457 U.S. 147, 157 (1982)). To that end, the Court is not convinced that the resolution of Washington's substantive allegations would produce a common answer "apt to drive the resolution of the litigation." *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350 (2011). After all, as described above, it is unclear what—if any—discovery materials the proposed class members received, and whether they were represented by counsel[1] at the

---

[1] As the Eighth Circuit recently emphasized, whether certain class members are represented by counsel may be relevant to the commonality requirement of Rule 23(a). *Powers,* 776 F.3d at 574. After all, the Court applies a "competent lawyer" standard—as opposed to an "unsophisticated consumer" standard—to discovery requests sent to a represented debtor during the course of litigation. *Id.*

- 5 -

time they received such materials. So, even assuming that B&Q violated the FDCPA and NCPA by engaging in the conduct alleged, individual inquiries would still be required to resolve class members' claims. *Powers,* 776 F.3d at 571.

For those reasons (and the reasons that follow), the Court concludes that Washington has failed to satisfy her burden, and that the prerequisites of Rule 23(a) are not satisfied. *Wal-Mart Stores,* 564 U.S. at 350. Accordingly, Washington's motion for class certification will be denied. The Court will, therefore, examine the parties' cross-motions for summary judgment as they apply to Washington individually.

## SUMMARY JUDGMENT

Washington claims that B&Q's discovery requests are false, misleading and unconscionable in two primary respects: (1) the discovery requests fail to include information regarding the right to object; and (2) the requests for incorrectly imply that answers must be "sworn" and "filed" with the court. Filing 69 at 5. Washington suggests other deficiencies in the nearly 700 pages of argument and evidence she has filed with the Court, but she does not meaningfully press those arguments in the underlying motion for summary judgment.

### (A) Standard of Review

Summary judgment is proper if the movant shows that there is no genuine dispute as to any material fact and that the movant is entitled to judgment as a matter of law. *See* Fed. R. Civ. P. 56(a). The movant bears the initial responsibility of informing the Court of the basis for the motion, and must identify those portions of the record which the movant believes demonstrate the absence of a genuine issue of material fact. *Torgerson v. City*

*of Rochester*, 643 F.3d 1031, 1042 (8th Cir. 2011) (en banc). If the movant does so, the nonmovant must respond by submitting evidentiary materials that set out specific facts showing that there is a genuine issue for trial. *Id.*

On a motion for summary judgment, facts must be viewed in the light most favorable to the nonmoving party only if there is a genuine dispute as to those facts. *Id.* Credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the evidence are jury functions, not those of a judge. *Id.* But the nonmovant must do more than simply show that there is some metaphysical doubt as to the material facts. *Id.* In order to show that disputed facts are material, the party opposing summary judgment must cite to the relevant substantive law in identifying facts that might affect the outcome of the suit. *Quinn v. St. Louis County*, 653 F.3d 745, 751 (8th Cir. 2011). The existence of a mere scintilla of evidence in support of the nonmovant's position will be insufficient; there must be evidence on which the jury could conceivably find for the nonmovant. *Barber v. C1 Truck Driver Training, LLC*, 656 F.3d 782, 791-92 (8th Cir. 2011). Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no genuine issue for trial. *Torgerson*, 643 F.3d at 1042.

### (B) FDCPA

Congress enacted the FDCPA to eliminate abusive debt collection practices, to ensure that debt collectors who abstain from such practices are not competitively disadvantaged, and to promote consistent state action to protect consumers against debt collection abuses. *Jerman v. Carlisle, McNellie, Rini, Kramer & Ulrich*, 559 U.S. 573, 577 (2010) (*citing* 15 U.S.C. § 1692(e)). To this end, the Act prohibits debt collectors from using "false, deceptive, or misleading representation[s] or means in connection with the collection of any debt." 15 U.S.C. § 1692(e). However, for liability to attach

under the FDCPA, the defendant must be a "debt collector," which the Act defines as "'any person . . . in any business the principal purpose of which is the collection of any debts, or who regularly collects or attempts to collect . . . debts owed or due or asserted to be owed or due another.'" *Sheriff v. Gillie*, 136 S. Ct. 1594, 1598 (2016) (quoting 15 U.S.C. § 1692(a)).

The defendants raise three arguments as to why, in their view, Washington's claims fail as a matter of law. First, B&Q argues that Washington has not suffered a concrete injury-in-fact, and that the Court therefore lacks jurisdiction over her claims. Second, defendant Quandahl claims that he is not a "debt collector" as that term is defined under the Act. And third, the defendants argue that, even assuming Washington has Article III standing, the alleged conduct does not amount to a violation of the FDCPA. *See* filing 98; filing 99.

### *(i) Standing*

Federal courts have subject-matter jurisdiction only over cases in which the plaintiff "satisf[ies] the threshold requirement imposed by Article III of the Constitution by alleging an actual case or controversy." *City of Los Angeles v. Lyons*, 461 U.S. 95, 101 (1983). In other words, federal courts have no jurisdiction over cases in which the plaintiff lacks standing to bring the complaint. *Warth v. Seldin*, 422 U.S. 490, 498 (1975). Standing has three components. First, plaintiffs must show that they have suffered an injury-in-fact that is both concrete in nature and particularized to them. *Allen v. Wright*, 468 U.S. 737, 755 (1984). Second, the injury must be fairly traceable to defendants' conduct. *Id.* at 757. Third, the injury must be redressable—relief "must be 'likely' to follow from a favorable decision." *Id*.

B&Q argues that the Court lacks jurisdiction over Washington's FDCPA claims because she has not alleged a concrete injury in fact. Filing 98

at 6, 15; *see FW/PBS, Inc. v. Dallas*, 493 U.S. 215, 231 (1990) (burden on plaintiff to allege sufficient facts to show jurisdiction). To support that contention, B&Q notes that Washington—despite her alleged confusion—properly submitted the discovery-related requests, and that judgment was not entered against her in the state court matter. Filing 98 at 8-9; filing 97-2 at 17. It also notes that Washington, by her own admission, is not seeking actual damages in the underlying litigation. Filing 97-3 at 3. Thus, B&Q contends, because Washington has failed to allege an actual injury, the Court should dismiss her FDCPA claims for lack of jurisdiction.

B&Q's argument is premised, in part, on the Supreme Court's recent decision in *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540 (2016). In *Spokeo*, the Supreme Court reiterated that, to establish Article III standing, the plaintiff must suffer a concrete injury—that is, "*de facto* . . . it must actually exist." *Id.* at 1548. And that requirement, the Supreme Court observed, demands more than a "bare procedural violation" of a statutorily created right. *Id.* at 1549. In other words, a plaintiff does not automatically satisfy the injury in fact requirement "whenever a statute grants a person a statutory right and purports to authorize that person to sue to vindicate that right." *Id.* at 1549. Rather, Article III requires a concrete injury even in the context of a statutory violation. *Id.*

But Washington has presented more than the "bare procedural violation" discussed—and rejected—in *Spokeo*. Indeed, Washington has presented evidence that she was, in fact, "confused by Defendants' discovery instruction." Filing 76-1 at 2. And as a result of that confusion, Washington filed her answers directly with the Douglas County Court—which, under state law, may render those answers "judicial admissions." *See City of Ashland v. Ashland Salvage, Inc.*, 711 N.W.2d 861, 868-69 (Neb. 2006). In

other words, Washington may now be prohibited from contesting any of the responses that she filed, even though Nebraska law does not (and did not) require her to do so. *Id.* ("an admission made in a pleading . . . is more than an ordinary admission; it is a judicial admission and constitutes a waiver of all controversy"); *see* Neb. Ct. R. Disc. § 6-326(g) ("discovery materials . . . shall not be filed with the court"). For those reasons, the Court finds that Washington has Article III standing to pursue her claims under the FDCPA. B&Q's motion for summary judgment will be denied on those grounds.

*(ii) Quandahl as "Debt Collector"*

Defendant Quandahl moves for summary judgment, arguing that he is not a "debt collector" as defined under the FDCPA. That argument is premised on the contention that Quandahl, a founding partner of B&Q, had resigned from the firm in December 2014—nearly 9 months before the initiation of Washington's state court proceedings. *See* filing 97-7. And as part of his resignation, Quandahl allegedly relinquished all financial interest in the company, thereby divesting his status as a partner, shareholder, officer, director or employee of the firm. Filing 97-7 at 1-3. Thus, Quandahl argues, because he in no way participated in the allegedly deceptive conduct, he cannot be held liable under the FDCPA. *See* filing 97-7 at 2-3; filing 97-6 at 2; filing 99 at 3.

But the record evidence suggests otherwise. Indeed, defendant Brumbaugh testified that Quandahl does, in fact, continue to receive payments from B&Q, and that he (Quandahl) has not been fully paid for his shares in the company. Filing 105-2 at 1-2. Further, B&Q's 2016 tax documents list Quandahl as the secretary and treasurer of the firm, and expressly indicate that he is a current acting director. *See* filing 102-3 at 16-18. And, while Quandahl claims to have had no involvement in Washington's

state court proceedings, his bar identification number is listed as a signatory on the allegedly false and misleading discovery requests. *See* filing 102-3 at 10-15. Based on that evidence, the Court cannot say, as a matter of law, that Quandahl is not—and was not—a "debt collector" for purposes of FDCPA liability. Accordingly, Quandahl's motion for summary judgment on these grounds will be denied.

### *(iii) Discovery Requests*

As discussed above, Washington claims that B&Q's discovery requests were false or misleading in various respects. She takes particular issue with the absence of language regarding *pro se* debtors' right to object and the allegedly false instructions regarding how, and where, discovery answers should be filed. The Court evaluates the allegedly false and misleading nature of those documents through the eyes of an unsophisticated consumer. *Peters v. General Service Bureau, Inc.*, 277 F.3d 1051, 1055 (8th Cir. 2002).

### Right to Object

In her amended complaint, Washington alleges violations of the FDCPA based on B&Q's "[failure] to advise consumer defendants of the right to object to all discovery requests." Filing 69 at 2. To that end, Washington suggests that debt collectors, in issuing discovery requests, have an affirmative duty to inform recipients of certain rights they possess under state law. And by failing to do so, Washington argues, debt collectors may be liable for false and misleading collection efforts.

Nebraska's Rules of Discovery clearly contemplate and allow for discovery related objections. *See* Neb. Ct. R. Disc. § 6-336(a). But they do not impose the type of affirmative obligation that Washington urges here. And Washington has provided no support for her proposition that, by failing to

include such language, B&Q necessarily engaged in abusive debt collection practices. Indeed, such a requirement, at least on these facts, would compel the type of "absurd result[]" that the Supreme Court has cautioned against in FDCPA cases involving debt collection attorneys. *Jerman v. Carlisle, McNellie, Rini, Kramer & Ulrich*, 559 U.S. 573, 600 (2010); *see Powers*, 776 F.3d at 570. B&Q's motion for summary judgment as to this alleged violation will be granted.

As a final matter, Washington's raises a related argument regarding "right to object" language in discovery forms that she did not personally receive. Specifically, Washington points to a template interrogatory that she uncovered during discovery in this case that informs recipients that "[o]bjections may be made to any request for confidential information such as bank account information, etc." Filing 101 at 30. According to Washington, that language is "misleading and deceptive" because it incorrectly limits the scope of material for which a *pro se* litigant may object. *See* filing 101 at 30. But the Court need not, and will not, decide that issue here. As noted, Washington did not personally receive that discovery request, and the argument is not encompassed by the amended complaint.

## "Sworn" and "Filed"

Washington next contends that B&Q's requests for admissions are false, misleading, and unconscionable because they incorrectly imply that the recipient's answers must be "sworn" and "filed." *See* filing 101 at 31-35. That instruction is misleading, Washington argues, because it "suggests a greater burden for unsophisticated Nebraska consumers." Filing 101 at 31. And it is false, she says, because (1) there is no requirement that discovery responses be "sworn," and (2) the Nebraska Rules of Discovery specifically instruct

litigants *not* to file materials with the court. Filing 101 at 31-34; *see* Neb. Ct. R. Disc. § 6-326(g).

There is no question that B&Q's "sworn" and "filed" directives are false under Nebraska's Rules of Discovery. But as several courts have recognized, and as B&Q emphasizes here, statements that are false "in some technical sense" are inherently immaterial, and therefore not actionable under § 1692e. *Hahn v. Triumph P'ships LLC*, 557 F.3d 755, 757-58 (7th Cir. 2009); *see Powell v. Palisades Acquisition XVI, LLC*, 782 F.3d 119, 126 (4th Cir. 2014); *Donohue v. Quick Collect, Inc.*, 592 F.3d 1027, 1034 (9th Cir. 2010); *cf. Powers v. Credit Mgmt. Servs.*, 776 F.3d 567, 571-72 (8th Cir. 2015). So, the operative inquiry is whether the falsehoods are material in the sense that they "frustrate a consumer's ability to intelligently choose his or her response." *Donohue*, 592 F.3d at 1034; *Palisades Acquisition XVI, LLC*, 782 F.3d 119, 126 (4th Cir. 2014).

The Court finds that B&Q's instructions are materially false, and that Washington is entitled to summary judgment on those grounds. As noted throughout, B&Q's instructions incorrectly imply that, in order to comply with discovery related procedures, the debtor must find a notary public and then file their responses with the court. Those additional steps, which are not required under Nebraska's Rules of Discovery, would undoubtedly frustrate the consumer's ability to intelligently choose his or her response—that is, whether to respond to the inquiries in the first place. Thus, it cannot be said, as B&Q implies here, that the instructions "would not mislead the unsophisticated consumer" or are otherwise "false in some technical sense." *Hahn*, 557 F.3d at 758 (quoting *Wahl v. Midland Credit Management, Inc.*, 556 F.3d 643, 645-46 (7th Cir. 2009)). Washington's motion will be granted.

General Denial & Response Date

As noted above, Washington makes broad references to other alleged deficiencies with B&Q's discovery requests. For example, she argues that B&Q acted improperly by asking her to admit matters that, Washington claims, she had previously denied. *See* filing 69 at 5; filing 76-2 at 11. Washington also claims that the discovery forms "failed to include information regarding the response date [and] where the responses should be sent." Filing 69 at 5.

But those arguments fail for at least two reasons. First, B&Q's discovery documents clearly state that answers are required "within thirty days of the service thereof[,]" and both contain information (as discussed above) about where the answers should be sent. *See* filing 69-1; *Birge v. Smeall*, 2013 WL 5789273, at *4 (D. Neb. 2013). Additionally, the Court has found no authority to suggest that a debt collector is prohibited from seeking admissions whenever a *pro se* debtor has filed a general denial to the underlying complaint. That result would significantly undermine the purpose of such pretrial discovery, which, as a general matter, is to "promote both efficiency and economy in resolving disputes." 8B Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 2252 (3d ed. 2010).[2] And that is particularly true here, where B&Q, prior to sending its request, had no information on what, specifically, Washington was denying. Thus, because B&Q's request for admissions was not false or misleading in the manner in

---

[2] That is not to imply, of course, that requests for admissions are never false or misleading in these circumstances. *See McCollough v. Johnson, Rodenburg & Lauinger, LLC*, 637 F.3d 939, 952 (9th Cir. 2011). But here, unlike *McCollough*, Washington was informed of the consequences of not responding, and B&Q did not possess information that specifically undermined its admission requests.

Washington alleges, B&Q's motion for summary judgment on these grounds will be granted.

### (C) NCPA

Washington also alleges that B&Q's discovery requests violate the NCPA as an "unfair or deceptive" act. But to be actionable under the NCPA, the alleged misconduct must "affect the public interest." Nelson v. Lusterstone Surfacing Co., 605 N.W.2d 136, 141 (Neb. 2000). In other words, an NCPA claim requires a showing that not just one, but many Nebraska citizens are affected by a defendant's practices. Eicher v. Mid Am. Fin. Inv. Corp., 748 N.W.2d 1, 12 (Neb. 2008). And here, because Washington is not entitled to class certification on her claims, it does not appear that she can make that showing.

But B&Q has not moved for summary judgment on these grounds. And while a district court may grant summary judgment on grounds not raised by a party, it must first provide the litigants with notice and a reasonable time to respond. *See* Fed. R. Civ. P. 56(f)(2). Thus, while the Court is inclined to grant B&Q summary judgment on the NCPA claims, Washington will be provided until October 7, 2017 to show cause why summary judgment should not be entered as to those claims. If no objection is filed, summary judgment will be entered for B&Q, and against Washington, with respect to Washington's claims under the NCPA.

### (D) Motion for Contempt

B&Q moves for an order of contempt against Washington's counsel, Pam Carr. Filing 113. That motion is premised on Carr's repeated references in this litigation to a prior consent decree between the parties. According to B&Q, Carr was advised, pursuant to a previous Court order, to "strike any all references to [the consent decree]." Filing 114 at 2.

The Court, too, is frustrated by the highly contentious nature of this dispute, and the parties' failure, at times, to heed prior orders of the Court. But upon full consideration of B&Q's argument, the Court is not convinced that contempt is appropriate on these facts. That said, the Court will insist that, in future proceedings, the parties tone down the persistent finger-pointing that often accompanies their briefing and argument. Such behavior does nothing to advance the issues and arguments that actually matter, and unnecessarily expands the already voluminous record.

### (e) Conclusion

Therefore, B&Q is entitled to summary judgment on each of Washington's FDCPA claims with the exception of Count I, which alleges violations based on the "sworn" and "filed" language described above. With respect to that claim, Washington is entitled to summary judgment, and statutory damages in the amount of $1,000.

But it is unclear, at least at this point, if defendant Quandahl shares in that liability. In other words, because genuine issues of material fact remain as to whether Quandahl is or was a "debt collector," the Court is unable to determine whether, if at all, Quandahl is liable. Accordingly, at this juncture, the claims remaining for disposition are Washington's NCPA claims and her claim against Quandahl based on the "sworn" and "filed" language of B&Q's discovery request.

IT IS ORDERED:

1. Washington's motion for class certification (filing 74) is denied.

2. B&Q's motion to dismiss for failure to state a claim (filing 77) is denied as moot.

3. B&Q's motion for summary judgment (filing 96) is granted in part, and denied in part, as set forth above.

4. Washington's motion for partial summary judgment (filing 100) is granted in part, and denied in part, as set forth above.

5. B&Q's motion for contempt (filing 113) is denied.

6. Washington shall show cause, on or before October 7, 2017, why summary judgment should not be entered as to her NCPA claims.

7. The Clerk of the Court shall enter a show cause deadline of October 7, 2017.

8. This matter is referred to the Magistrate Judge for case progression as to Washington's remaining, unresolved claim against Quandahl.

Dated this 19th day of September, 2017.

BY THE COURT:

John M. Gerrard
United States District Judge